UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


(FILED ELECTRONICALLY)


CIVIL ACTION NO.  3:19-cv-725-CRS

UNITED STATES OF AMERICA                                        PLAINTIFF

vs.


MARK ANTHONY CHESSER, Individually and                    DEFENDANTS
As Executor of the ESTATE OF JAMES T. JAMISON
224 Cull Road
Mount Eden, KY 40046

KATHY S. JAMISON
A/K/A KATHY SHINGLETON
185 Hill Street
Taylorsville, KY 40071-8758


**<u>COMPLAINT FOR FORECLOSURE</u>**

Plaintiff, the United States of America, states as follows:

1.      This is a mortgage foreclosure action brought by the United States of America on

behalf of its agency, the United States Department of Agriculture Rural Housing Service also

known as Rural Development (hereinafter collectively "RHS").

2.      Jurisdiction arises under 28 U.S.C. § 1345.  Venue is proper in this judicial

division, where the subject property is located.

3.      RHS is the holder of a promissory note ("the Note") executed for value on

February 20, 2003 by George T. Jamison Sr., also known as George Thomas Jamison Sr., and

Edna P. Jamison, also known as Edna Pearl Case Jamison ("the Borrowers"), now deceased and

not defendants herein.  The principal amount of the Note was $46,160.00, bearing interest at the

rate of 6.00 percent per annum, and payable in monthly installments as specified in the Note. A copy of the Note is attached as **Exhibit A** and incorporated by reference as if set forth fully herein.

4.      The Note is secured by a Real Estate Mortgage (the "Mortgage") recorded on February 23, 2003, in Mortgage Book 180, Page 340, in the Office of the Clerk of Spencer County, Kentucky. Through the Mortgage, the Borrowers, married, granted RHS a first mortgage lien against the real property including all improvements, fixtures and appurtenances thereto at 1312 Cooks Lane, Mount Eden, Spencer County, Kentucky (the "Property") and described in more detail in the Mortgage. A copy of the Mortgage is attached as **Exhibit B** and incorporated by reference as if set forth fully herein.

5.      The Property contains a modular home that is part of the real estate. See Affidavit of Conversion to Real Estate relating to the modular home located on the above Property and recorded in Miscellaneous Book 1, Page 687 in the Office of the Clerk of Spencer County, Kentucky.

6.      To receive subsidies on the loan, the Borrowers signed a Subsidy Repayment Agreement authorizing RHS to recapture, upon transfer of title or non-occupancy of the Property, any subsidies granted to the Borrowers by RHS. A copy of the Subsidy Repayment Agreement is attached as **Exhibit C** and incorporated by reference as if set forth fully herein.

7.      On December 17, 2009, Edna Pearl Case Jamison died. Upon her death, all of her right, title and interest vested in George T. Jamison Sr. by virtue of the survivor clause in the Deed dated February 20, 2003, and recorded in Deed Book 171, Page 590 in the Office of the Clerk of Spencer County, Kentucky.

8.      On February 8, 2010, George T. Jamison Sr. died intestate, a resident of Spencer County, Kentucky, leaving as his heirs-at-law James Thomas Jamison, George Thomas Jamison, Jr., Kathy S. Jamison and Uneeda Lynn Jamison Bratcher as shown by Affidavit of Descent dated August 27, 2012, and recorded in Deed Book 248, Page 179 in the Office of the Clerk of Spencer County, Kentucky.

9.      On or about July 27, 2011, James Jamison, also known as James Thomas Jamison and James T. Jamison, son of the Borrowers, executed and delivered to RHS an Assumption Agreement, a copy of which is attached and marked **Exhibit D**, and which is hereby incorporated by reference as if set forth at length herein.  In and by the Assumption Agreement, James T. Jamison became liable to RHS under the Note and Mortgage.

10.      The right, title and interest of Uneeda Lynn Jamison Bratcher, unmarried, was conveyed to George Thomas Jamison, Jr., unmarried, and Kathy S. Jamison, unmarried, by Quitclaim Deed dated June 23, 2012, and recorded in Deed Book 248, Page 192 in the Office of the Clerk of Spencer County, Kentucky.

11.      George Thomas Jamison Jr., unmarried, conveyed his right, title and interest to James Thomas Jamison, unmarried, by Deed dated September 11, 2012, and recorded in the Office of the Clerk of Spencer County, Kentucky.

12.      James T. Jamison, also known as James Jamison and James Thomas Jamison, defaulted on the Note, Mortgage and Assumption Agreement by failing to make payments when due and by abandoning the Property.

13.      RHS has, in accordance with the loan documents, accelerated the loan and declared the entire principal balance, together with all accrued and unpaid interest and all other

sums due under the loan documents, to be due and payable.  Further, RHS sent notice of the default and acceleration of the loan.

14.     In accordance with the loan documents, the United States is entitled to enforce the Mortgage through this foreclosure action and to have the Property sold to pay all amounts due, together with the costs and expenses of this action.

15.     The unpaid principal balance on the Note is $33,122.40 with accrued interest of $3,539.10 through July 23, 2019 with a total subsidy granted of $20,513.60, escrow charges of $434.35, late charges in the amount of $24.00, and fees assessed of $3,820.19, for a total unpaid balance of $61,453.64 as of July 23, 2019.  Interest is accruing on the unpaid principal balance at the rate of $6.0502 per day after July 23, 2019.

16.     The Property is indivisible and cannot be divided without materially impairing its value and the value of RHS's lien thereon.

17.     James Jamison, also known as James T. Jamison and James Thomas Jamison, died testate on October 5, 2017.

18.     The Last Will and Testament signed by James Thomas Jamison, also known as James Jamison and James T. Jamison, prior to his death bequeaths the property, which is the subject of this foreclosure action, to his sister Defendant **Kathy S. Jamison**, subject to the life estate of his friend, Defendant **Mark Anthony Chesser**.  This Last Will and Testament is recorded in Will Book 20, Page 87 in the Office of the Clerk of Spencer County, Kentucky.  A copy of the Last Will and Testament is attached as **Exhibit E** and incorporated by reference as if set forth fully herein.  This Last Will and Testament of James T. Jamison was filed in the Spencer County Probate Case 17-P-00099 on October 18, 2017.

19.     The United States names **Mark Anthony Chesser**, individually, in that the Will of James Thomas Jamison provides in part: "I give, devise and bequeath my 1.04 acre tract of real estate, including the modular home that has been converted to the real estate, located at 1312, Cooks Lane, Mt. Eden, Spencer County, Kentucky 40046, to my sister, Kathy S. Jamison, subject, however, to the life estate of my friend, Mark Anthony Chesser, who is residing with me at the time of the execution of this Last Will and Testament." **Exhibit E**.  The Will further provided, "In the event, however, that my friend, Mark Anthony Chesser, voluntarily vacates the real estate at anytime following my death, then and in that event the life estate herein created shall be forfeited by my friend, Mark Anthony Chesser, and the real estate shall pass to my sister, Kathy S. Jamison, free and clear of any life estate. *Id*.  The United States calls upon **Mark Anthony Chesser**, individually, to assert to assert whatever right, title or claim he may have in or to the Property or to the proceeds from the sale thereof, or be forever barred.  This Defendant's interest, if any, is inferior to the rights of the United States.

20.     The United States names **Mark Anthony Chesser**, as Executor of the Estate of Jamie Thomas Jamison, as a Defendant to allow this Defendant to assert whatever right, title or claim he may have in or to the Property or to the proceeds from the sale thereof, or be forever barred.  This Defendant's interest, if any, is inferior to the rights of the United States.

21.     The United States names **Kathy S. Jamison also known as Kathy Shingleton** as a Defendant to allow this Defendant to assert whatever right, title or claim she may have in or to the Property or to the proceeds from the sale thereof, or be forever barred.  This Defendant's interest, if any, is inferior to the rights of the United States.

22.     There are no other persons or entities purporting to have an interest in the Property known to the Plaintiff.

WHEREFORE, Plaintiff, the United States of America, on behalf of RHS, demands:

a.       *In rem* judgment against the interests of the Defendants in the Property in the principal amount of $33,122.40, plus $3,539.10 interest as of July 23, 2019, and $20,513.60 for reimbursement of interest credits, escrow charges of $434.35, late charges in the amount of $24.00, and fees assessed of $3,820.19, for a total unpaid balance due of $61,453.64 as of July 23, 2019, with interest accruing at the daily rate of $6.0502 from July 23, 2019, until the date of entry of judgment, and interest thereafter according to law, plus any additional costs, disbursements and expenses advanced by the United States;

b.       That the United States be adjudged a lien on the Property, prior and superior to any and all other liens, claims, interests and demands, except liens for unpaid real estate ad valorem taxes;

c.       That the United States' lien be enforced and the Property be sold in accordance with 28 U.S.C. §§ 2001-2003 subject to easements, restrictions and stipulations of record, but free and clear of all other liens and encumbrances except liens for any unpaid ad valorem real property taxes;

d.       That the proceeds from the sale be applied first to the costs of this action, second to any ad valorem real property taxes, if any, third to the satisfaction of the debt, interest, costs and fees due the United States, with the balance remaining to be distributed to the parties as their liens or interests may appear;

e.       That the Property be adjudged indivisible and be sold as a whole; and

f.      That the United States receive any and all other lawful relief to which it may be

entitled.

UNITED STATES OF AMERICA

RUSSELL M. COLEMAN
United States Attorney


s/ William F. Campbell
William F. Campbell
Katherine A. Bell
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky  40202
Phone:  502/582-5911
Fax:    502/625-7110
bill.campbell@usdoj.gov
Katherine.bell@usdoj.gov

USDA-RHS
Form FmHA 1940-16
(Rev. 10-96)

# PROMISSORY NOTE

*EP.J. JJ*

Type of Loan SECTION 502

Loan No. ~~████~~

Date: __February 20__ , __2003__

__1312 Cooks Lane__
(Property Address)

__Mount Eden__ , __Spencer__ , __Kentucky__
(City or Town)       (County)       (State)

**BORROWER'S PROMISE TO PAY.** In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors)("Government") $ __46,160.00__ (this amount is called "principal"), plus interest.

**INTEREST.** Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __6.000__ %.The interest rate required by this section is the rate I will pay both before and after any default described below.

**PAYMENTS.** I agree to pay principal and interest using one of two alternatives indicated below: *EP.J. JJ*

[x] I. Principal and interest payments shall be temporarily deferred. The interest accrued to ~~August 20~~ *June 11* , __2003__ shall be added to the principal. The new principal and later accrued interest shall be payable in __35~~7~~6__ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ __46,247.19__ , and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

[ ] II. Payments shall not be deferred. I agree to pay principal and interest in _____ installments as indicated in the box below.

*EP.J. JJ.*            *EP.J. JJ.*

I will pay principal and interest by making a payment every month. I will make my monthly payment on the ~~16th~~ *July 11* day of each month beginning on ~~September 20,~~ *20*03 and continuing for __35~~7~~5__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __February 20__,__2033__ , I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ __278.40__ . I will make my monthly payment at __the post office address noted on my billing statement__ or a different place if required by the Government.

**PRINCIPAL ADVANCES.** If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

**HOUSING ACT OF 1949.** This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

1

*Exhibit A*

'LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.000 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

Account # ███████████

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA / Rural Housing Service, c/o Customer Service Branch, P.O. Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING:** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal          _____ Seal
           Borrower                                                     Borrower

_____ Seal          _____ Seal
           Borrower                                                     Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL  $ | |

Account #: █████████



BOOK 188        PAGE 345

Form RD 3550-14 KY
(8-99)

Space Above This Line For Recording Data

Form Approved
OMB No. 0575-0172

**United States Department of Agriculture**
**Rural Housing Service**

# MORTGAGE FOR KENTUCKY

THIS MORTGAGE ("Security Instrument") is made on   **February, 20, 2003**   .       [Date]
The mortgagor is  **George T. Jamison and Edna P. Jamison, married**                       ("Borrower").

This Security Instrument is given to the United States of America acting through the Rural Housing Service or successor agency,
United States Department of Agriculture ("Lender"), whose address is Rural Housing Service, c/o Centralized Servicing Center,
United States Department of Agriculture, P.O. Box 66889, St. Louis, Missouri 63166.

Borrower is indebted to Lender under the following promissory notes and/or assumption agreements (herein collectively called
"Note") which have been executed or assumed by Borrower and which provide for monthly payments, with the full debt, if not
paid earlier, due and payable on the maturity date:

| Date of Instrument | Principal Amount | Maturity Date |
|---|---|---|
| February 20, 2003 | $46,160.00 | February 20, 2033 |

This Security Instrument secures to Lender:  (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the property covered by this Security Instrument; (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note, and (d) the recapture of any payment assistance and subsidy which may be granted to the
Borrower by the Lender pursuant to 42 U.S.C. §§ 1472(g) or 1490a.  For this purpose, Borrower does hereby mortgage, grant,
and convey to Lender the following described property located in the County of    **Spencer**
. State of Kentucky

**SEE ATTACHED EXHIBIT "A"**

which has the address of    **1312  Cooks Lane, Mt. Eden**
                                              [Street]                                    [City]
Kentucky   **40071**        [ZIP]        ("Property Address");

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures which now or hereafter are a part of the property.  All replacements and additions shall
also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the
"Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it
displays a valid OMB control number.  The valid OMB control number for this information collection is 0575-0172.  The time
required to complete this information collection is estimated to average 15 minutes per response, including the time for
reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and
reviewing the collection of information*

Page 1 of 6


Exhibit B

Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; and (d) yearly flood insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law or federal regulation that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held by a federal agency (including Lender) or in an institution whose deposits are insured by a federal agency, instrumentality, or entity. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property after acceleration under paragraph 22, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law or Lender's regulations provide otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied in the following order of priority: (1) to advances for the preservation or protection of the Property or enforcement of this lien; (2) to accrued interest due under the Note; (3) to principal due under the Note; (4) to amounts required for the escrow items under paragraph 2; (5) to late charges and other fees and charges.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Lender has agreed in writing to such lien or Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

Page 2 of 6

Borrower shall pay to Lender such fees and other charges as may now or hereafter be required by regulations of Lender, and pay or reimburse Lender for all of Lender's fees, costs, and expenses in connection with any full or partial release or subordination of this instrument or any other transaction affecting the property.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurer providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, at Lender's option Lender may obtain coverage to protect Lender's rights in the Property pursuant to paragraph 7.

All insurance policies and renewals shall be in a form acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within thirty (30) days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The thirty (30) day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If after acceleration the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation, Maintenance, and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall maintain the improvements in good repair and make repairs required by Lender. Borrower shall comply with all laws, ordinances, and regulations affecting the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender is not required to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Refinancing.** If at any time it shall appear to Lender that Borrower may be able to obtain a loan from a responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes, Borrower will, upon the Lender's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby in full.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. In the event of a total taking of the Property, the proceeds shall be

applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction:  (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking.  Any balance shall be paid to Borrower.  In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured hereby immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within thirty (30) days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower and any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.  Successors and Assigns Bound; Joint and Several Liability; Co-signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16.  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.  Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.  Governing Law; Severability.**  This Security Instrument shall be governed by federal law.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.  This instrument shall be subject to the present regulations of Lender, and to its future regulations not inconsistent with the express provisions hereof.  All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise; and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

**15.  Borrower's Copy.**  Borrower acknowledges receipt of one conformed copy of the Note and of this Security Instrument.

**16.  Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is leased for a term greater than three (3) years, leased with an option to purchase, sold, or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

**17.  Nondiscrimination.**  If Borrower intends to sell or rent the Property or any part of it and has obtained Lender's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower, will refuse to negotiate for the sale or rental of the Property or will otherwise make unavailable or deny the Property to anyone because of race, color, religion, sex, national origin, handicap, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims and will not comply with or attempt to enforce any restrictive covenants on dwelling relating to race, color, religion, sex, national origin, handicap, age or familial status.

**18.  Sale of Note; Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower.  A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security

Page 4 of 6

Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 13 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made.

19. **Uniform Federal Non-Judicial Foreclosure.** If a uniform federal non-judicial foreclosure law applicable to foreclosure of this security instrument is enacted, Lender shall have the option to foreclose this instrument in accordance with such federal procedure.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the Property. The preceding sentence shall not apply to the presence, use, or storage on the Property of small quantities of hazardous substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any federal, state, or local environmental law or regulation.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations.

As used in this paragraph "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means federal laws and regulations and laws and regulations of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

21. **Cross Collateralization.** Default hereunder shall constitute default under any other real estate security instrument held by Lender and executed or assumed by Borrower, and default under any other such security instrument shall constitute default hereunder.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **SHOULD DEFAULT** occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, Lender, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to Lender hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the Property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the Property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

23. The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to Lender secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at Lender's option, any other indebtedness of Borrower owing to Lender, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the Property, Lender and its agents may bid and purchase as a stranger and may pay Lender's share of the purchase price by crediting such amount on any debts of Borrower owing to Lender, in the order prescribed above.

24. Borrower agrees that Lender will not be bound by any present or future state laws, (a) providing for valuation, appraisal, homestead or exemption of the Property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which Lender may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the Property to a new Borrower. Borrower expressly waives the benefit of any such state law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

25. **Release.** Upon termination of this mortgage, after payment in full, the mortgagee, at Borrower's expense, shall execute and file or record such instruments of release, satisfaction and termination in proper form pursuant to the requirements contained in KRS 382.365

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each rider shall be incorporated into and

shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box]

☐ Condominium Rider      ☐ Planned Unit Development Rider      ☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 6 of this Security Instrument and in any rider executed by Borrower and recorded with this Security Instrument

*Edna P. Jamison* [SEAL]
                                                                              Borrower

_____ [SEAL]
                                                                              Borrower

STATE OF KENTUCKY         }
                          } ss :      **ACKNOWLEDGMENT**
COUNTY OF ___Spencer___   }

Before me, __Ruth A. Hollan_____, a Notary Public in and for the County of __Spencer_____, personally appeared __George T. Jamison and Edna P. Jamison__ __married_____ who acknowledged that __they__ executed the foregoing instrument on the __20th__ day of __February, 2003_____ as __their__ free act and deed.

WITNESS my hand and official seal this __20th__ day of __February, 2003_____

[SEAL]                                   _____ Notary
                                                                              Public

My commission expires __10/21/05__

**PREPARER'S STATEMENT**
The form of this instrument was drafted by the Office of the General Counsel of the United States Department of Agriculture, and the material in the blank spaces in the form was inserted by or under the direction of:

__Ruth A. Hollan_____          _____
*(Name)*                                                     *(Signature)*
PO Box 395, Taylorsville, KY  40071  (502) 477-6300
*(Address)*

**RECORDER'S CERTIFICATE**

STATE OF KENTUCKY         }
                          } ss :
COUNTY OF ___SPENCER___   }

I, _____, Clerk of the County Court for the County aforesaid, do certify that the foregoing mortgage was on the _____ day of _____, _____, lodged for record _____ at _____ o'clock ____M., whereupon the same, with the foregoing and this certificate, have been duly recorded in my office.

Given under my hand this _____ day of _____, _____.

_____
*Clerk of        County Court*
By _____, D.C.

Page 6 of 6

### EXHIBIT "A"

Beginning at a pin in the center line of Cook's Lane, a 30 ft. wide county road, corner to the balance of the Case-Jamison tract, said pin being North 29 deg. 53 min. 20 sec. East 53.30 ft., as measured with the center line of Cook's Lane from a pin corner to the Nethery 20 acre tract described by deed recorded, in Deed Book 64, page 236, in the Spencer County Clerk's Office; thence leaving the road with the balance of the Case-Jamison, North 55 deg. 23 min. 39 se. West 182.00 ft. to an iron pipe on ridge, thence with another line of the Case-Jamison tract, North 43 deg. 14 min. 59 sec. East 268.77 ft. to an iron pipe on ridge North 43 deg. 14 min. 59 sec. East 268.77 ft. to an iron pipe on ridge North of the existing farm road thence with another line of the balance of the Case-Jamison tract, South 46 deg. 15 min. 29 sec. East 182.00 ft. to a spike in the center line of Cook's Lane corner to the balance of the Case-Jamison tract; thence with the center line of Cook's Lane, South 44 deg. 56 min. 42 sec. West 180.06 ft. to a pin in center line, thence South 40 deg. 07 min. 37 sec. West 59.96 ft. to the point of beginning, containing 1.04 acres.

Being the same property conveyed to George T. Jamison and Edna P. Jamison, by deed dated February 20, 2003, of record in Deed Book 1+1, Page 590, in the Spencer County Clerk's Office.

Being the same property conveyed to Pearl Case Jamison a/k/a Edna P. Jamison by deed dated April 1989, of record in Deed Book 88, Page 433, in the Spencer County Clerk's Office.



07/28/2011  08:40   5026330552                    USDA RD SHELBYVILLE                    PAGE  02/07

Form RHS 3550-12
(10-96)  0603                    United States Department of Agriculture          Form Approved
                                         Rural Housing Service                   OMB No. 0575-0166

                                                                      Account #:

### SUBSIDY REPAYMENT AGREEMENT

1.   As required under Section 521 of the Housing Act of 1949 (42 U.S.C. 1490a), subsidy received in accordance with Section 502 of the Housing Act of 1949, is repayable to the Government upon the disposition or nonoccupancy of the security property. Deferred mortgage payments are included as subsidy under this agreement.

2.   When I fail to occupy or transfer title to my home, recapture is due.  If I refinance or otherwise pay in full without transfer of title and continue to occupy the property, the amount of recapture will be calculated but, payment of recapture can be deferred, interest free, until the property is subsequently sold or vacated.  If deferred, the Government mortgage can be subordinated but will not be released nor the promissory note satisfied until the Government is paid in full.  In situations where deferment of recapture is an option, recapture will be discounted 25% if paid in full at time of settlement.

3.   Market value at time of initial subsidy $ 70,000.00  less amount of Rural Housing Service (RHS) loans $46,160.00  less amount of any prior liens $ 14,999.00  equals my/our original equity $9,841.00.  This amount equals  12.6  % of the market value as determined by dividing original equity by the market value.

4.   If all loans are not subject to recapture, or if all loans subject to recapture are not being paid, complete the following formula. Divide the balance of loans subject to recapture that are being paid by the balance of all open loans.  Multiply the result by 100 to determine the percent of the outstanding balance of open loans being paid.

5.

| months loan outstanding | Average interest rate paid | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | 1% | 1.1 2% | 2.1 3% | 3.1 4% | 4.1 5% | 5.1 6% | 6.1 7% | >7% |
| 0   -   59 | .50 | .50 | .50 | .50 | .44 | .32 | .22 | .11 |
| 60   -   119 | .50 | .50 | .50 | .49 | .42 | .31 | .21 | .11 |
| 120   -   179 | .50 | .50 | .50 | .48 | .40 | .30 | .20 | .10 |
| 180   -   239 | .50 | .50 | .49 | .42 | .36 | .26 | .18 | .09 |
| 240   -   299 | .50 | .50 | .46 | .38 | .33 | .24 | .17 | .09 |
| 300   -   359 | .50 | .45 | .40 | .34 | .29 | .21 | .14 | .09 |
| 360 & up | .47 | .40 | .36 | .31 | .26 | .19 | .13 | .09 |

6.   Calculating Recapture
     Market value (at the time of transfer or abandonment)
     LESS:
         Prior liens
         RHS balance,
         Reasonable closing costs,
         Principal reduction at note rate,
         Original equity (see paragraph 3), and
         Capital improvements.
     EQUALS
         Appreciation Value. (If this is a positive value, continue.)
     TIMES
         Percentage in paragraph 4 (if applicable),
         Percentage in paragraph 5, and
         Return on borrower's original equity (100% - percentage in paragraph 3).                    _James Jamison_____
     EQUALS                                                                                          JAMES T. JAMISON
         Value appreciation subject to recapture.  Recapture due equals the lesser of this           _____
         figure or the amount of subsidy received.                                                   DATE

| Borrower                          | Date          |
|-----------------------------------|---------------|
| Edna P. Jamison                   | 2-20-03       |
| Borrower                          | Date          |
|                                   | 2-20-03       |

*Public reporting burden for this collection of information is estimated to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C. 20250-7602.  Please DO NOT RETURN this form to this address.  Forward to the local USDA office only.  You are not required to respond to this collection of information unless it displays a currently valid OMB control number.*

Exhibit C

08/02/2011   09:16   5026330552                    USDA RD SHELBYVILLE                    PAGE   02/02
                                                   **RECEIVED**

USDA-RHS
Form RD 3550-22                    . 0024              AUG 0 2 2011                    FORM APPROVED
(Rev. 8-99)                                                                           OMB NO. 0575-0172

                                              DIRECT LOSS MITIGATION
                                              SECTION

| | | |
|---|---|---|
| **UNITED STATES DEPARTMENT OF AGRICULTURE** | Original Loan Assumed | ✓ Section 502 |
| **RURAL HOUSING SERVICE** | | Section 504 |
| | Type of Transferee | Program Transferee |
| **ASSUMPTION AGREEMENT** | | NonProgram Transferee |
| **SINGLE FAMILY HOUSING** | Type of Assumption | New Rates and Terms |
| | | ✓ Same Rates and Terms |
| | Sellers Case No: | 00-000-0040409985 |
| | Transferee Case No: | |

This Agreement dated   7/27/2011   is between the United States of America, acting through the Rural

Housing Service, its successors and assigns (herein called the Government) and   James T. Jamison

(herein called the Borrower or transferee), whose mailing address is:   1312 Cook's Lane Mt. Eden, KY 40046

The Government is the holder of one or more of the following debt instruments executed,   George T. & Edna D. Jamison

_____ (the sellers), which instrument is secured by real property located in

Spencer _____ County, State of   Kentucky _____ pursuant to the following security instruments:

| Type of Debt Instrument | Date Executed | Original Principal | Interest Rate | Type of Security Instrument | Date Executed | Office Where Recorded | Book/Volume Document No. | Page No. |
|---|---|---|---|---|---|---|---|---|
| Prom. note | 02-20-2003 | $46160.00 | 5.0000 | Mortgage | 02-20-2003 | Spencer County | 180 | 340 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

In consideration of the assumption of the indebtedness as herein provided and the Government's consent to this assumption and related conveyance of the security property, if applicable, it is agreed as follows:

1. The Borrower will assume the indebtedness and obligations of the above described debt and security instruments on (check only one):
   ☑ Same rates and terms; or
   ☐ New rates and terms with an interest rate of _____ percent ( _____ ) per
annum, the principal sum of _____ dollars
($ _____ ), with the first installment of principal and interest of $ _____ due on
_____ , and $ _____ thereafter on the _____ of each month until
the principal and interest are fully paid, except that the final installment of this entire indebtedness evidenced hereby, if not paid sooner, shall be due
and payable _____ ( _____ ) years from the date of this Agreement. Borrower shall
escrow taxes and insurance in accordance with Agency regulations. By execution of this agreement borrower becomes personally obligated to repay
the principal and interest to the Government on the terms stated herein.

2. Payments of principal and interest shall be applied in accordance with Government's accounting procedures in effect on the date of receipt of the
payments. If Borrower's payment has not been received by the end of   14   days after it becomes due. Borrower will pay a late charge of
4.0000 % of the overdue payment of principal and interest.

3. The provision of the debt and security instruments hereby assumed shall, except as modified herein, remain in full force and effect, and Borrower
assumes the obligations of and agrees to comply with all covenants, agreements, and conditions in said instruments, as modified here, as though
Borrower had executed them as of the date thereof as principal obligors. Borrower agrees to be personally liable to the Government for the repayment of
the obligation assumed herein. Nothing contained herein shall be construed to release the seller from liability on the above described debt instruments.

4. Any provision of the debt or security instruments which requires that the Borrower occupy the Government financed dwelling or refinance to another
credit source does not apply to assumption by a non-program transferee.

5. This agreement is subject to present regulations of the Government and to its future regulations which are not inconsistent with the express provisions
hereof.

UNITED STATES OF AMERICA                              _James Jamison_____
RURAL HOUSING SERVICE                                 (Borrower)
By:   _Stephen T. Lamme_____
Title:   Area Specialist                              _____
Date: _____                        (Borrower)
Address:   90 Howard Drive Ste. 3
           Shelbyville, KY 40065                      _____
                                                      (Cosigner)

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control
number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated
to average 5 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed,
and completing and reviewing the collection of information.

Exhibit D

# LAST WILL AND TESTAMENT

## OF

## JAMES THOMAS JAMISON

**FILED**

OCT 18 2017

BECKY M. ROBINSON BY____
SPENCER CIRCUIT & DIST COURT

I, **JAMES THOMAS JAMISON**, residing at 1312 Cooks Lane, Mt. Eden, Spencer County, Kentucky 40046, do make, publish and declare this to be my Last Will and Testament, hereby revoking all wills and codicils heretofore made by me.

## ARTICLE I

I acknowledge that I am unmarried at the time of the execution of this Last Will and Testament and further acknowledge that I have no children, biological or adopted.

I further acknowledge that my parents, **George Thomas Jamison, Sr.** and **Edna Pearl Case Jamison**, are deceased. My mother, **Edna Pearl Case Jamison**, died December 17, 2009; and my father, **George Thomas Jamison, Sr.**, died February 8, 2010.

I have three (3) adult siblings, namely, **Uneeda Lynn Jamison Bratcher, George Thomas Jamison, Jr.** and **Kathy S. Jamison**, who are living at the time of the execution of this Last Will and Testament. Any and all references to my siblings in this Last Will and Testament are to **Uneeda Lynn Jamison Bratcher, George Thomas Jamison, Jr.** and **Kathy S. Jamison.**

## ARTICLE II

I direct that all of my just debts, my funeral expenses and the costs of the administration of my estate be paid from my estate as soon as practicable after my death.

JTJ

Exhibit E

### ARTICLE III

I direct that my Executor pay out of my estate without apportionment all estate, inheritance, succession and other taxes, together with any interest or penalty thereon, assessed by reason of my death, imposed by the government of the United States, or any state.

### ARTICLE IV

I give, devise and bequeath my 1.04 acre tract of real estate, including the modular home that has been converted to the real estate, located at 1312 Cooks Lane, Mt. Eden, Spencer County, Kentucky 40046, to my sister, **Kathy S. Jamison**, subject, however, to the life estate of my friend, **Mark Anthony Chesser**, who is residing with me at the time of the execution of this Last Will and Testament. In the event, however, that my friend, **Mark Anthony Chesser**, voluntarily vacates the real estate at anytime following my death, then and in that event the life estate herein created shall be forfeited by my friend, **Mark Anthony Chesser**, and the real estate shall pass to my sister, **Kathy S. Jamison**, free and clear of any life estate.

### ARTICLE V

I give, devise and bequeath my five (5) acre tract of real estate known and described as Tract #1 on the approved Minor Subdivision Plat dated September 28, 2010, and recorded in Plat Cabinet 5, Slide 125, Spencer County Clerk's Office, to my brother, **George Thomas Jamison, Jr.** and my friend, **Mark Anthony Chesser**, share and share alike, and direct that the real estate shall not be sold by my herein named devisees during their respective lifetimes.

## ARTICLE VI

I give, devise and bequeath my 1985 Chevrolet four wheel ¾ ton pickup truck and my 2000 Dodge Neon automobile to my friend, **Mark Anthony Chesser,** the same to be his absolutely.

## ARTICLE VII

I give, devise and bequeath my porcelain angel collection to my niece, **Katlyn Singleton,** the same to be hers absolutely.

## ARTICLE VIII

I give, devise and bequeath my fishing equipment to my nephew, **Christopher Singleton,** the same to be his absolutely.

## ARTICLE IX

I give, devise and bequeath my lawnmower, trailer and weedeater to my friend, **Mark Anthony Chesser,** the same to be his absolutely.

## ARTICLE X

I give, devise and bequeath the remainder of my estate not otherwise disposed of herein, both real and personal, to my brother, **George Thomas Jamison, Jr.;** my sister, **Kathy S.**

Jamison; my niece, **Katlyn Singleton**, who is the daughter of my sister, **Kathy S. Jamison**; my nephew, **Christopher Singleton**, who is the son of my sister, **Kathy S. Jamison**; and my nephew, **Austin Jamison**, who is the son of my brother, **George Thomas Jamison, Jr.**, share and share alike.

## ARTICLE XI

I acknowledge my sister, **Uneeda Lynn Jamison Bratcher**, but I specifically intend to omit my sister from this Will and direct that she is not to receive anything from my estate and therefore make no provision for her in this Last Will and Testament.

## ARTICLE XII

I nominate and appoint my friend, **Mark Anthony Chesser**, as Executor of this my Last Will and Testament and direct that he be allowed to qualify without surety on his bond. My personal representative shall have full authority (a) to sell, at public or private sale, without appraisal, at such terms of credit or otherwise as my personal representative shall deem best, the whole or any part of my estate, real or personal, for the purposes of administration, division, distribution and the carrying out of the terms of this Will; (b) to execute, acknowledge and deliver deeds and all other instruments of conveyance therefor to any purchaser or purchasers without the order of any court whatsoever, and no such purchaser or purchasers need see to the proper application of the proceeds of the sale; and (c) to compromise, or otherwise settle or adjust any claim of any nature whatsoever against or in favor of my estate as fully as I could do if living.

IN WITNESS WHEREOF, I have signed this Will at Taylorsville, Spencer County, Kentucky, on this the _14th_ day of August, 2014, and for purposes of identification have initialed the four preceding typewritten pages.

_James Thomas Jamison_
**JAMES THOMAS JAMISON**

The foregoing instrument, consisting of this and four preceding typewritten pages, was signed and declared by **James Thomas Jamison**, the testator, to be his Last Will and Testament, in our presence, and, we, at his request and in his presence and in the presence of each other, have hereunto subscribed our names as witnesses, this the _14th_ day of August, 2014, at Taylorsville, Spencer County, Kentucky.

_____ residing at _Louisville, KY 40207_

_____ residing at _Taylorsville, KY_

STATE OF KENTUCKY)
                 ) SS.
COUNTY OF SPENCER)

Before me, the undersigned Notary Public, personally appeared **James Thomas Jamison**, the testator, and **Robert M. Coots** and **John W. Coots**, the witnesses, whose names are signed to the foregoing instrument, and all of these persons were by me first duly sworn; and the testator declared to me and to the witnesses that the testator had willingly signed this instrument as his

IN WITNESS WHEREOF, I have signed this Will at Taylorsville, Spencer County, Kentucky, on this the 14th day of August, 2014, and for purposes of identification have initialed the four preceding typewritten pages.

_James Thomas Jamison_

**JAMES THOMAS JAMISON**

The foregoing instrument, consisting of this and four preceding typewritten pages, was signed and declared by **James Thomas Jamison**, the testator, to be his Last Will and Testament, in our presence, and, we, at his request and in his presence and in the presence of each other, have hereunto subscribed our names as witnesses, this the 14th day of August, 2014, at Taylorsville, Spencer County, Kentucky.

_John W. Coots_____ residing at _Louisville, KY  40207_

_Robert M. Coots_ residing at _Taylorsville, KY_

STATE OF KENTUCKY)
                                    ) SS.
COUNTY OF SPENCER)

Before me, the undersigned Notary Public, personally appeared **James Thomas Jamison**, the testator, and **Robert M. Coots** and **John W. Coots**, the witnesses, whose names are signed to the foregoing instrument, and all of these persons were by me first duly sworn; and the testator declared to me and to the witnesses that the testator had willingly signed this instrument as his

free and voluntary act for the purposes therein expressed; and each of the witnesses stated to me, in the presence and hearing of the testator, that they signed the Last Will and Testament as witnesses and that to the best of their knowledge the testator was eighteen years of age or older, of sound mind and under no constraint or undue influence.

WITNESS my hand and seal this _14th_ day of August, 2014.

NOTARY PUBLIC
STATE OF KENTUCKY AT LARGE

My commission expires _October 6, 2015_

THIS INSTRUMENT PREPARED BY:

**ROBERT M. COOTS**
Attorney at Law
P. O. Box 458
Taylorsville, Kentucky 40071
502/477-3330

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS

UNITED STATES OF AMERICA

**DEFENDANTS**

MARK ANTHONY CHESSER, ET AL.

**(b)**   County of Residence of First Listed Plaintiff

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   SPENCER

(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II.  BASIS OF JURISDICTION      (Place an "X" in One Box Only)

☑ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☑ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☑ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V.  ORIGIN      (Place an "X" in One Box Only)

☑ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from another district (specify)

☐ 6   Multidistrict Litigation

☐ 7   Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. SECTION 1345

Brief description of cause:
RURAL HOUSING SERVICE (RHS) f/k/a FARMERS HOME ADMINISTRATION (FmHA) FEDERAL FORECLOSURE

## VII.  REQUESTED IN COMPLAINT:

☐  CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**
$61,453.64

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☑ No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):

JUDGE                                DOCKET NUMBER

DATE
10/8/2019

SIGNATURE OF ATTORNEY OF RECORD
s/ William F. Campbell

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# United States District Court

**WESTERN**       DISTRICT OF       **KENTUCKY**
**AT LOUISVILLE**

United States of America                    **SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Mark Anthony Chesser, et al.

**TO:**   (Name & Address of Defendant)

MARK ANTHONY CHESSER, Individually and
As Executor of the ESTATE OF JAMES T. JAMISON
224 Cull Road
Mount Eden, KY 40046

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within _____twenty-one (21)_____ days after service of
this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against
you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

_____                    _____
**CLERK**                                                                 DATE

_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐   Served personally upon the defendant.  Place where served:

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age

and   discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐   Returned unexecuted:

_____
_____
_____

☐   Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on   _____      _____
                  Date                                    Signature of Server

---

[1]   **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**

# United States District Court

### WESTERN _____ DISTRICT OF _____ KENTUCKY _____
### AT LOUISVILLE

United States of America

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

Mark Anthony Chesser, et al.

**TO:**   (Name & Address of Defendant)

KATHY S. JAMISON
A/K/A KATHY SHINGLETON
185 Hill Street
Taylorsville, KY 40071-8758

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name & address)

William F. Campbell
Assistant U.S. Attorney
United States Attorney's Office
717 West Broadway
Louisville, KY  40202

an answer to the complaint which is herewith served upon you, within _____ twenty-one (21) _____ days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

_____          _____
**CLERK**                                                                    DATE


_____
**(BY) DEPUTY CLERK**

# RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date |
|---|---|
| Name of Server (Print) | Title |

**Check one box below to indicate method of service**

☐   Served personally upon the defendant.  Place where served:

_____

☐   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and

discretion then residing therein.  Name of person with whom the summons and complaint were left:

_____
_____

☐   Returned unexecuted:

_____
_____
_____

☐   Other (specify):

_____
_____
_____

## STATEMENT OF SERVICE FEES

| Travel  N/A | Services | Total |
|---|---|---|

### DECLARATION OF SERVER

     I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service of Service Fees is true and correct.

Executed on _____        _____
               Date                                        Signature of Server

_____

[1]   **As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure**